UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| AL-MAHDI MOHAMMED, | : Case No. 1:04-cv-715 |
| Plaintiff, | : Magistrate Judge Timothy S. Black |
| v. | : |
| MAIL CONTRACTORS OF AMERICA, INC., | : |
| Defendant. | : |

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a race and religion employment discrimination failure-to-hire case brought by Plaintiff Al-Mahdi Mohammed ("Mohammed") against Defendant Mail Contractors of America, Inc. ("MCA") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and Ohio state law.

Mohammed alleges that MCA failed to hire him, and, thus, discriminated against him because of his race and religion. MCA responds that Mohammed was not hired initially because he verbally assaulted Audrey Blackwell, an MCA Company Dispatcher at MCA's Cincinnati, Ohio terminal. MCA also states that Mohammed was not hired on subsequent applications both because of his verbal assault and because other applicants filed their applications first.

Ultimately, Mohammed fails to offer any credible evidence that could allow a reasonable jury to infer that the legitimate and nondiscriminatory reasons proffered by MCI for its actions are false, and that its true reasons for not hiring Mohammed reflect unlawful racial or religious discrimination.

MCA is engaged in the hauling of mail and other products across the United States via tractor-trailer. (*See* Doc. 45-3, Ex. B, Affidavit of Audrey Blackwell at ¶ 4.) On September 29, 2003, Mohammed applied online for an extra board driver position with the Company at its Cincinnati, Ohio terminal. (Mohammed Dep., p. 122: 17-22.) He was subsequently not hired for this position

After applying online, Mohammed alleges that he spoke to MCA's Little Rock, Arkansas headquarters. (Mohammed Dep., p. 109: 7-25.) Mohammed alleges that MCA's headquarters told him that he was approved for an interview and that he needed to contact Audrey Blackwell at MCA's Cincinnati terminal to schedule his interview. (Mohammed Dep., p. 110: 1-3.)

Mohammed alleges that he then called Blackwell and scheduled an interview for November 14, 2003.  (Mohammed Dep., p. 110: 4-5).  Mohammed claims that when he appeared for the scheduled interview, Blackwell failed to be present.

Mohammed subsequently called Blackwell to complain.  (Doc. 45-3, Ex. B, Blackwell Aff. at ¶ 7.)  Blackwell apologized to Mohammed, explained that she had no documentation of a scheduled interview with Mohammed, and told him she would look into it.  (*Id.*)  At that point, Mohammed became hostile and told Blackwell that she was "unprofessional" and "inconsiderate" and that she had "wasted his time."  (*Id.*)

The very next day, Mohammed repeatedly called Blackwell and was again very hostile towards her.  (*Id.* at ¶¶ 9 and 11.)  During their telephone conversations, Mohammed demanded to know why his interview had not been rescheduled, accused Blackwell of being a "racist," and claimed that he knew he would not be interviewed because he was Muslim.  (*Id.*; Mohammed Dep. pp. 105: 23–25, 106: 1–24, 107: 17–24, 113: 14–24, 114: 11–25, 115: 1-21.)  Blackwell assured him those claims were false and unfounded.  (Doc. 45-3, Ex. B, Blackwell Aff. at ¶¶ 9 and 14.)  Mohammed proceeded to call Blackwell's fellow MCA employee a "liar."  (*Id.* at ¶ 9.)  Blackwell ended the conversation at that point.  (*Id.*)

Based upon Mohammed's hostility and unprofessional behavior towards Blackwell, MCA decided not to interview or hire Mohammed for the position.  (*Id.* at ¶ 10; *see also* Doc. 45-4, Ex. C, Affidavit of Sue DeSerisy at ¶ 7.)

During this period and after, Mohammed continued applying online for other positions with MCA.  (Mohammed Dep. pp. 122: 17-22, 126: 16-25, 127: 1- 20, 129: 7-17, 131: 17-25, 132: 4-14; 19-21, 133: 7-18, 134: 4-18, 138: 12-25.)  Mohammed was not interviewed or hired for these positions because of his November 2003 verbal assault of Blackwell and MCA's policy of hiring applicants whose application MCA received first.  (Blackwell Aff. at ¶¶ 5, 9, and 11; DeSerisy Aff. at ¶¶ 7 and 8.)  Blackwell did not base her decision not to interview or hire Mohammed on either his race or religion.  (Blackwell Aff. at ¶ 15.)

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The trial judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

In the present case, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), the Court employs the familiar McDonnell Douglas burden-shifting framework at the summary judgment stage. *Burns v. City of Columbus*, 91 F.3d 836, 843 (6th Cir. 1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the McDonnell Douglas burden-shifting framework, a presumption of discrimination is created when and if Mohammed meets his burden of establishing a prima facie case of employment discrimination. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–03).

If Mohammed establishes a prima facie case, the burden of production shifts to MCA to show that it had a legitimate, nondiscriminatory reason for its actions. *Id.* If and once MCA meets its burden of production, the presumption of discrimination disappears, requiring Mohammed to evidence that MCA's proffered justification is false and merely a pretext for discrimination. *Id.*

At all times, the burden of persuasion, and the ultimate burden of proving intentional unlawful discrimination, remains with Mohammed. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### MCA's Legitimate, Non-Discriminatory Reason – Mohammed Verbally Assaulted Audrey Blackwell, an MCA Employee.

According to MCA, Mohammed was not hired upon his initial application with MCA because of his verbal assault on Blackwell. (Blackwell Aff. at ¶ 10; DeSerisy Aff. at ¶ 7.) Further according to MCA, Mohammed was not hired for his subsequent applications with MCA for this same reason and because of MCA's policy to hire drivers as they applied with MCA on a first-come basis. (Blackwell Aff. at ¶¶ 5, 9, and 11; DeSerisy Aff. at ¶¶ 7 and 8.)

Once MCA articulated its legitimate non-discriminatory reasons for its actions, Mohammed then had the burden of proving that MCA's proffered reason for its actions is merely a pretext for its discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).

"[P]roof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to judgment; instead, the showing must be that the explanation is a pretext for discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 506-07.

A reason cannot be proved to be a "pretext for discrimination unless it is shown both that (1) the reason was false and (2) that discrimination was the real reason" for the employer's actions. *St. Mary's Honor Ctr.*, 509 U.S. at 515. It is not enough to

<u>disbelieve the employer</u>; **the fact-finder must be able to believe the employee's explanation of intentional discrimination**.  *Id*. at 520-25.

Mohammed has absolutely no credible evidence whatsoever that would allow a jury to reject MCA's reasons and infer that unlawful race or religious discrimination are MCA's true reasons for its actions.  Mohammed has no evidence that Blackwell even knew that Mohammed was Muslim and black before Mohammed claimed, during one of his verbal assaults, that Blackwell was racist and not interviewing him because he was Muslim.  And, as described below, Mohammed has attempted to perpetrate a fraud upon the Court, which misconduct, now exposed, would prevent any fact-finder from believing Mohammed's attempts to explain MCA's alleged intentional discrimination.

Mohammed claims that MCA's proffered legitimate reason for not hiring him is a pretext for discrimination because MCA allegedly failed to raise his harassing and belligerent conduct as the reason for not hiring him until filing its Motion for Summary Judgment and Brief in Support.  In support of this proposition, Mohammed offers a purported letter addressed to him from the EEOC dated July 21, 2004.  (*See* Doc. 49-14, Exhibit E.)

The third paragraph of Exhibit E states the following:

> Respondent claims that you were not hired for a driver position because other people were hired who had applied before you.

Plaintiff relies upon this statement by the EEOC to conclude that MCA failed, prior to these summary judgment proceedings, to raise his belligerent conduct as the reason for its refusal to hire him.

In response, MCA denies the authenticity of Exhibit E.

During the course of this litigation, MCA made a FOIA request for the EEOC's file on the Plaintiff's charge of discrimination.  **The FOIA file provided to MCA by the EEOC does not contain a copy of the letter (Exhibit E) relied upon by the Plaintiff**.  Instead, the file contains a very similar letter with the exact same hand-written date and signature.  (*See* Doc. 53-2 at p. 28, Exhibit D.)  However, the third paragraph of the letter contained in the EEOC file contains the following:

> Respondent claims that you were not hired for a driver position because of an altercation you had with the company.  Later you were not hired for driver positions because people were hired who had applied before you.

(*See* Doc. 53-2 at p. 28, Exhibit D.)  **This is the only letter dated July 21, 2004 which is contained in the EEOC's file.**

Moreover, a comparison of Plaintiff's Exhibit E and the authentic July 21, 2004 letter contained in the EEOC file reveals several discrepancies between the two. Indeed, Ms. Helen B. Glutz, the EEOC investigator assigned to Mohammed's Charge of Discrimination against MCA, and the alleged author of Plaintiff's Exhibit E, states under oath that she mailed the version of the July 21, 2004 letter contained in the EEOC's file, and she did not send Mohammed a different letter.  (*See* Doc. 57-1, Exhibit A, Affidavit of Helen B. Glutz.)

Plaintiff has no explanation why his Exhibit E is not in the certified copy of the EEOC file.  He also has not produced an original signed copy of his Exhibit E, even though the EEOC mails the original signed copy of such letters to the Charging Party. (*See* Doc. 57-2, Ex. B, Affidavit of Louise S. Brock at ¶¶ 5-7; *see also* Affidavit of Helen B. Glutz at ¶ 6.)

In order to conclude that Plaintiff's letter is authentic and was drafted by the EEOC, several assumptions must be true.

First, one must assume that the EEOC drafted two different letters on the same day that had identical wording, but for two varying renditions of MCA's position, and had identical hand-written dates and signatures by the same person, and sent both of them to Mohammed.

Second, one must assume that Exhibit E (the letter containing no reference to the altercation) somehow failed to find its way to the EEOC's file.  However, there is no evidence that the EEOC's file is inaccurate.

Third, it is very "convenient" that the letter that Plaintiff claims to have received from the EEOC fails to contain a reference to the altercation that he now claims that MCA never previously asserted as a defense.

Moreover, there are other discrepancies between the two letters.  For example, Mohammed's name is misspelled "Mohammad" in the greeting in the letter contained in the EEOC's file, but is spelled "Mohamm<u>e</u>d" (which is the correct spelling) in the greeting in Plaintiff's Exhibit E.  Moreover, the address label on the envelope Plaintiff has produced as having received from the EEOC also reflects the same misspelling of Plaintiff's name as reflected in the authentic letter but not reflected in Plaintiff's Exhibit E.  Additionally, the dates and signatures of Helen B. Glutz on both letters are absolutely identical images, to the point where the "J" in "July" covers the "e" in "Date" in the exact same manner.

Further, there are two typographical errors that appear in Plaintiff's Exhibit E but which do not appear in the authentic letter produced from the EEOC's file.  That is, in paragraph two of Exhibit E, the second sentence states: "We believe it is unlikely that further investigation or other used [use] or [of] our limited resources will establish a violation of any laws we enforce."  (The correct wording used in the authentic letter in

-5-

the EEOC file is contained in brackets.)  Second, in paragraph five of Exhibit E, the first sentence begins:  "If our [your] charge . . . ."  (Again, the correct wording in the authentic letter in the EEOC file is contained in brackets.)

Additionally, the left hand margin on Exhibit E is not aligned with the address at the top of the letter or the date at the bottom of the letter as is the margin of its counterpart provided by the EEOC.

Accordingly, what is patently obvious in this case is that Plaintiff's Exhibit E, his primary document submitted to this Court in an attempt to establish pretext and avoid summary judgment, is a fake document.  No reasonable person could agree with Plaintiff's version of the facts regarding his Exhibit E.

Plaintiff (or someone on his behalf) altered the original July 21, 2004 letter, the version contained in the certified copy of the EEOC file, and created Exhibit E, a fake document, in an attempt to prove Plaintiff's case.  Such fraud and trickery is unconscionable.  It undermines the very purpose of our judicial system, and it wastes the time and resources of the Court and the opposing party.

Mohammed has no proof whatsoever of pretext relating to racial or religious discrimination beyond his own fraudulent assertions.  No reasonable jury could infer race or religious discrimination based upon this record and in light of Mohammed's obvious effort to defraud the Court.  That is, Mohammed fails to offer any credible evidence that could allow a reasonable jury to infer that MCA's legitimate, nondiscriminatory reasons for its actions are false, and that its true reasons for not hiring Mohammed were based upon unlawful racial or religious discrimination.

Accordingly, the Court hereby grants MCA's Motion for Summary Judgment and dismisses this case.

**IT IS SO ORDERED.**

| | |
|---|---|
| **1/19/07** | **/s/Timothy S. Black** |
| Date | Timothy S. Black |
| | United States Magistrate Judge |